UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
at CHATTANOOGA

| | | |
|---|---|---|
| CHRISTIAN OMAR MUNGUIA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | Case Nos. 1:04-cr-122 / 1:09-cv-170 |
| | ) | Judge Edgar |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |

## MEMORANDUM AND ORDER

Federal prisoner Christian Omar Munguia ("Munguia") moves for post-conviction relief pursuant to 28 U.S.C. § 2255 claiming that he was deprived of his right to effective assistance of counsel in violation of the Sixth Amendment to the United States Constitution. He moves for leave to supplement the record with *Lafler v. Cooper*, 132 S.Ct. 1376, 182 L.Ed.2d 398 (2012). Munguia contends that *Lafler* should be taken into consideration with regard to claims 1 and 3. The motion for leave to supplement [Court Doc. No. 272] is granted.

Munguia moves for leave to take discovery pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts. The motion [Court Doc. No. 272] is denied. Munguia fails to meet his burden of showing good cause why he should be allowed to take discovery.

After reviewing the record, the Court concludes that the entire § 2255 motion as amended [Court Doc. Nos. 249, 253] must be denied and dismissed with prejudice. The record conclusively shows that the motion is without merit and Munguia is not entitled to any relief under § 2255. There

1

is no need for an evidentiary hearing.

## I.     Standard of Review Under 28 U.S.C. § 2255

28 U.S.C. § 2255(a) provides that a federal prisoner may make a motion to vacate, set aside, or correct a judgment of conviction or sentence on the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the federal district court lacked jurisdiction to impose the sentence, or that the sentence is in excess of the maximum authorized by federal law, or is otherwise subject to collateral attack.

As a threshold standard to relief a § 2255 motion must allege: (1) an error of federal constitutional magnitude; (2) a sentence was imposed in excess of the maximum authorized by federal law; or (3) an error of fact or law that was so fundamental as to render the entire criminal proceeding invalid. *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006); *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006); *Mallett v. United States*, 334 F.3d 491, 496-97 (6th Cir. 2003); *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003); *Weinberger v. United States*, 268 F.3d 346, 351 (6th Cir. 2001). Munguia bears the burden of establishing an error of constitutional magnitude which had a substantial and injurious effect or influence on the criminal proceedings. *Reed v. Farley*, 512 U.S. 339, 353 (1994); *Brecht v. Abrahamson*, 507 U.S. 619, 637-38 (1993); *Humphress v. United States*, 398 F.3d 855, 858 (6th Cir. 2005); *Griffin v. United States*, 330 F.3d 733, 736 (6th Cir. 2003); *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999).

A § 2255 motion is not a substitute for a direct appeal. Where nonconstitutional issues are at stake, there is no basis for allowing a collateral attack under 28 U.S.C. § 2255 to do service for a direct appeal. *Bousley v. United States*, 523 U.S. 614, 621 (1998); *United States v. Frady*, 456 U.S. 152, 167-68 (1982); *United States v. Timmreck*, 441 U.S. 780, 784 (1979); *Regalado v. United*

2

*States*, 334 F.3d 520, 528 (6th Cir. 2003); *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996). To obtain relief under 28 U.S.C. § 2255 for a nonconstitutional error, e.g. an error in calculating the applicable advisory sentencing guideline range under the United States Sentencing Guidelines, Munguia must establish either: (1) a fundamental defect in the criminal proceedings which inherently resulted in a complete miscarriage of justice; or (2) an error so egregious that it amounts to a violation of due process. *Reed*, 512 U.S. at 353-54; *Hill v. United States*, 368 U.S. 424, 428 (1962); *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999); *Watson*, 165 F.3d at 488; *Fair v. United States*, 157 F.3d 427, 430 (6th Cir. 1998); *Grant,* 72 F.3d at 505-06.

Munguia has the burden of articulating sufficient facts to state a viable claim for relief. Vague, conclusory claims which are not substantiated by allegations of specific facts with some probability of verity are not enough to warrant an evidentiary hearing. A § 2255 motion may be dismissed if it merely makes conclusory statements without substantiating allegations of specific facts and thereby fails to state a claim under § 2255. *Green v. Wingo*, 454 F.2d 52, 53 (6th Cir. 1972); *O'Malley v. United States*, 285 F.2d 733, 735 (6th Cir. 1961); *Brain v. United States*, 2011 WL 1343344, * 2 (E.D. Tenn. April 8, 2011); *Jones v. United States*, 2010 WL 1882122, * 2 (E.D. Tenn. May 11, 2010).

An evidentiary hearing is unnecessary if there are no genuine issues of material fact in dispute and the record conclusively shows that Munguia is not entitled to relief under § 2255. An evidentiary hearing is not required where Munguia's allegations and claims cannot be accepted as true because they are contradicted by the record, inherently incredible, or mere conclusions rather than statements of fact. *Amr v. United States*, 280 Fed. Appx. 480, 485 (6th Cir. 2008); *Valentine v. United States*, 488 F.3d 325, (6th Cir. 2007); *Arredondo v. United States*, 178 F.3d 778, 782 (6th

Cir. 1999); *Brain*, 2011 WL 1343344, at * 2; *Jones*, 2010 WL 1882122, at * 1.

## II.    Facts and Procedural History

The underlying facts are set forth in *United States v. Munguia*, 273 Fed. Appx. 517 (6th Cir. 2008).  On September 15, 2004, a federal grand jury returned a six-count superseding indictment against Munguia and three co-defendants.  Munguia was only charged in Count One.  Count One of the superseding indictment charged that Munguia, Charlie Stevenson ("Stevenson"), Vernon Whaley ("Whaley"), and Fredrico Lopez-Galardo ("Lopez-Galardo"), and other persons known and unknown to the grand jury, conspired to violate 21 U.S.C. § 841(a)(1), that is, to knowingly, intentionally, and without authority distribute 500 grams or more of a mixture or substance containing methamphetamine, a Schedule II controlled substance, all in violation of 21 U.S.C. § 846.

Co-defendants Stevenson, Whaley, and Lopez-Galardo pleaded guilty to the conspiracy pursuant to plea agreements.  Munguia was represented by an experienced criminal defense attorney, Clayton Whittaker ("Whittaker").  Munguia chose to plead not guilty and take his case to a jury trial.  Co-defendants Stevenson and Lopez-Galardo, along with unindicted co-conspirator Denise Arellano, testified at trial for the prosecution against Munguia.  In its response opposing Munguia's 28 U.S.C. § 2255 motion [Court Doc. No. 258], respondent United States provides a good summary of the facts and evidence presented at trial which need not be repeated here.  Suffice to say that the government presented an overwhelming amount of incriminating evidence against Munguia.

On November 2, 2005, the jury returned a verdict finding Munguia guilty.  In its verdict form, the jury made a specific finding that the government had proved beyond a reasonable that Munguia conspired to distribute 500 grams or more of a mixture or substance containing methamphetamine.   [Court Doc. No. 206].  Pursuant to 21 U.S.C. § 841(b)(1)(A) the minimum

sentence was ten years imprisonment and the maximum was life imprisonment.

The probation office prepared a presentence investigation report (PSR) using the 2004 version of the United States Sentencing Guidelines. The PSR correctly determined that Munguia was responsible for a total of 3.17 kilograms of methamphetamine. In calculating the applicable advisory guideline range, the probation officer established that Munguia's base offense level was 34 pursuant to U.S.S.G. §§ 2D1.1(a)(3) and 2D1.1(c)(3). There was a base offense level of 34 because the amount of methamphetamine was at least 1.5 kilograms but less than 5 kilograms.

There was a two-level enhancement pursuant to U.S.S.G. § 3B1.1(c) because the evidence established that Munguia was an organizer, leader, manager, and/or supervisor of one or more other participants the methamphetamine trafficking conspiracy. Munguia recruited and directed the criminal activities of co-defendant Lopez-Galardo and co-conspirator Girardo Ramirez-Carmona. This yielded an adjusted offense level of 36. Munguia had six criminal history points and a criminal history category III. His advisory guideline range was 235-293 months imprisonment.

Counsel for Munguia filed objections to the PSR. [Court Doc. No. 227]. Whittaker argued that certain statements in the PSR were based upon inaccurate drug amounts and Munguia should only be held accountable for between 500 grams and 1.5 kilograms of methamphetamine, which would have resulted in a lower base offense level of 32. Whittaker raised an objection that the PSR's estimate of 3.17 kilograms of methamphetamine was incorrect and not supported by the evidence presented at trial. Whittaker also objected to the two-level enhancement to Munguia's offense level pursuant to U.S.S.G. § 3B1.1(c). It was argued that Munguia did not manage, direct, or supervise the activities of other participants in the methamphetamine trafficking conspiracy.

During the sentencing hearing on February 6, 2006, this District Court denied Munguia's

objections to the PSR. The Court determined that the PSR was correct. After taking into consideration the relevant factors in 18 U.S.C. § 3553, this Court sentenced Munguia to be imprisoned for a term of 240 months to be followed by five years of supervised release. The judgment of conviction was entered on February 16, 2006. [Court Doc. No. 234].

Munguia took a direct appeal from the judgment of conviction and sentence to the Sixth Circuit Court of Appeals. He argued that the District Court erred by: (1) denying his motion *in limine* to exclude certain evidence relating to cell telephone numbers; (2) admitting evidence of witnesses' cell telephone contact lists and logs over his hearsay objection; and (3) denying a post-trial motion for a material-witness warrant filed pursuant to 18 U.S.C. § 3144. On April 16, 2008, the Sixth Circuit rendered its opinion affirming the judgment of conviction and sentence, and dismissing the direct appeal. *Munguia*, 273 Fed. Appx. 517. Munguia did not file a petition for writ of certiorari in the United States Supreme Court.

## III.    Statements of Munguia and Whittaker in 28 U.S.C. § 2255 Proceeding

### A.    Munguia's Declaration Under Penalty of Perjury

There is attached to the 28 U.S.C. § 2255 motion a supplemental declaration made under penalty of perjury by Munguia pursuant to 28 U.S.C. § 1746. Munguia states the following:

(1) Mr. Whittaker never advised of the possibilities of a plea agreement in which in exchange for my guilty plea my sentence would have been substantially less than what I received after a jury finding guilty in my case. I did tell Mr. Whittaker to explore the possibilities of a favorable plea agreement, however, Mr. Whittaker assured me we would win at trial and not to worry about a plea agreement. Had Mr. Whittaker obtained a favorable plea agreement I would not have went to trial but pleaded guilty;

(2) Mr. Whittaker never explained the elements of conspiracy and how they applied to my case. If Mr. Whittaker had told me that the evidence needed to convict me of conspiracy was minimal at best, I would not

6

have pleaded not guilty but insisted on pleading guilty;

(3) I further swear that I repeatedly told Mr. Whittaker to challenge the drug calculation the presentence report held me accountable for; moreover, I told Mr. Whittaker to raise on direct appeal that I was not accountable for 3.17 kilograms of methamphetamine;

(4) I told Mr. Whittaker to challenge all relevant conduct determinations that were calculated into my sentence;

(5) I told Mr. Whittaker to challenge the presentence report finding that I recruited and directed the activities of Fredrico Lopez-Galardo and Girardo Ramirez-Carmona;

(6) I further swear that I have never met nor do I know Girardo Ramirez-Carmona. I further swear that I informed Mr. Whittaker of this fact.

[Court Doc. No. 249, pp. 13-14].

## B.    __Affidavit of Attorney Clayton Whittaker__

Respondent submits the counter-affidavit of Whittaker who states the following:

In my representation of the Petitioner [Munguia], I had initial conferences about his involvement in the case. I gathered and reviewed the discovery. Motions were filed. A motion was filed with the court to appoint money for an investigator. The investigator was employed to gather evidence and to assist in the trial preparation. The trial was held in October of 2005 and in preparation for trial a number of conferences were held with the Petitioner. Pursuant to the court's scheduling order, Petitioner was given the opportunity to take a plea agreement but declined. In the summer and fall of 2005 on several occasions, I advised Petitioner that if he persisted in his desire to go to trial that he would likely be found guilty. At each conference, Petitioner maintained his innocence and refused to consider pleading guilty. Finally, at a meeting before trial in September, I advised Petitioner that it was not my recommendation to go to trial, but that if he wished we would try the case, but that he would have to live with his decision. At no time did I ever advise the Petitioner to go to trial or advise him that he would be successful at trial. Actually, my advise was always to the contrary particularly, considering that his co-defendants were eager to testify against him and that conviction was likely. The proof was strong against Petitioner and I repeatedly told him during my representation that his conviction was likely and that he should consider a plea. At all times he refused to discuss settlement. Petitioner was convicted.

7

[Court Doc. No. 267].

## C. Munguia's Affidavit in Reply

In reply, Munguia submits his sworn affidavit which states in part:

> 3. During the pre-trial stages, I had instructed my attorney Clayton M. Whittaker on three occasions to implement guilty proceedings and open up plea negotiations with the Assistant U.S. Attorney Perry Piper.

> 4. Counsel led me to believe up until several months before trial, that the Government has not "put any deals on the table;" that "nothing is on the table, yet." Each time that he would visit me at the jail (5 to 6 times), days preceding a hearing, I would ask, and strenuously request him to get me a deal, because I did not want to go to trial, and would rather plead guilty.

> 5. Mr. Whittaker would always try to defer my attempts, demands to plead guilty, to seek a plea offer because, I don't believe he can win the case. He would assure me that, because there was no direct evidence to connect me to the controlled substance, and that he can win the case.

> 6. I constantly instructed counsel to oppose the drug amounts being alleged because "some of the evidence" I am responsible, but not what he was telling after I finally decided to reject any plea offers. I finally told him after being overborne with his persistence that he can win the case, I contested to him that the drug quantities being alleged are not known to me, and I should not be held accountable, and that the amounts alleged by several government/witnesses Charles Stevenson, Frederico Lopez-Galardo were not true.

> 7. I wanted to go to trial on what I knew about, what I partook of, not what others did on their own, in the course of my involvement.

> 8. I would like to take a lie detector test directed by the United States Attorney and with counsel present in my behalf, because I don't want this to be simple "a word against word" for the record, and more importantly, I should have to guilty of, and sentence "as if" I am responsible acts and lies of others. I am serving, I am sure more time than my conduct prescribed. I should have a right to be sentenced based upon accurate information, and based upon lies (to save self).

> 9. My attorney was instructed to prevent these increases in drug quantities after telling me I will face more time after I was found guilty. Did stood mute and did not oppose the increase of my maximum drug quantity

8

at sentencing. I asked counsel secure the three-pounds of methampheta-
mine then. The indictment charged an unspecific amount of methamphe-
tamine. I asked Whittaker why there's no specific amount? He told me
that's how it works. So I took it he could not object to the indictment's
unspecified amount and the jury verdict form's unspecified amount.

10. Mr.Whittaker never explained to me why did not actually oppose, at
the sentencing hearing the increase in drug amount, as he refused to op-
pose the $50,000.00 cash seized from Stevenson almost a year earlier,
into methamphetamine, as he refused to oppose the leadership role which
no testimony was offered and no testimony sought by the government. My
Total Base Offense Level should be 32 without the enhancements, or 34,
without the additional drugs I was not charged for and not found guilty of.

[Court Doc. No. 275].

## IV. *Strickland* Test for Sixth Amendment Claims of Ineffective Counsel

The Sixth Amendment to the United States Constitution provides that in all criminal

prosecutions, the accused shall have the to right to assistance of counsel for his defense. Ineffective

counsel that violates the Sixth Amendment occurs when an attorney's deficient performance causes

actual prejudice to the defendant. *Lockhart v. Fretwell*, 506 U.S. 356, 369 (1993); *Strickland v.

Washington*, 466 U.S. 668, 687 (1984); *Sowell v. Bradshaw*, 372 F.3d 821, 836 (6th Cir. 2004).

*Strickland* establishes a two-part test for deciding claims of ineffective counsel. First,

Munguia must show that his attorney's performance was deficient. Second, Munguia is required

to demonstrate that the attorney's deficient performance caused him to suffer actual prejudice.

*Strickland*, 466 U.S. at 687; *Sowell*, 372 F.3d at 836-37; *Griffin*, 330 F.3d at 736; *Smith v. Mitchell*,

348 F.3d 177, 199 (6th Cir. 2003); *Mason v. Mitchell,* 320 F.3d 604, 616 (6th Cir. 2003).

The first prong of the *Strickland* test requires Munguia to show that his attorney's

representation fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 687-88;

*Sowell*, 372 F.3d at 836; *Wickline v. Mitchell,* 319 F.3d 813, 819 (6th Cir. 2003); *Carter v. Bell*, 218

F.3d 581, 591 (6th Cir. 2000); *Gravely v. Mills*, 87 F.3d 779, 785 (6th Cir. 1996); *Green v. United States*, 65 F.3d 546, 551 (6th Cir. 1995). The Court's scrutiny of the reasonableness of counsel's performance is highly deferential. Counsel is strongly presumed to have rendered adequate legal assistance, and to have made all decisions in the exercise of reasonable professional judgment and sound strategy. *Nix v. Whiteside*, 475 U.S. 157, 165 (1986); *Strickland*, 466 U.S. at 689-90 (strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance); *Sowell*, 372 F.3d at 837; *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004); *Mason,* 320 F.3d at 616-17; *Wickline,* 319 F.3d at 819; *Skaggs v. Parker*, 235 F.3d 261, 268 (6th Cir. 2000); *O'Hara v. Wigginton*, 24 F.3d 823, 838 (6th Cir. 1994).

Strategic choices made by an attorney after thorough investigation of the relevant facts and law are virtually unchallengeable. Strategic choices made by counsel after less than complete investigation are reasonable precisely to the extent that reasonable professional judgment supports the limitation or restriction placed on the investigation. Defense counsel has a duty to make a reasonable investigation under the circumstances or make a reasonable decision that a particular investigation is unnecessary. *Strickland*, 466 U.S. at 690-91; *Skaggs*, 235 F.3d at 268.

The second prong of the *Strickland* test requires Munguia to show that the attorney's deficient performance caused actual prejudice to his case. *O'Hara*, 24 F.3d at 828; *Lewis v. Alexander*, 11 F.3d 1349, 1352 (6th Cir. 1993). The prejudice component focuses on the question whether counsel's deficient performance renders the result of the criminal proceeding unreliable or fundamentally unfair. *Lockhart*, 506 U.S. at 372; *Skaggs*, 235 F.3d at 270. The Court must determine whether the performance of counsel was so manifestly deficient that defeat was snatched from the hands of probable victory. *Thelen v. United States,* 131 Fed. Appx. 61, 63 (6th Cir. 2005);

*West v. Seabold*, 73 F.3d 81, 84 (6th Cir. 1996); *Lewis*, 11 F.3d at 1352; *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992) (en banc).

To satisfy the prejudice element, Munguia must show there is a reasonable probability that, but for the errors and deficient performance of counsel, the result would have been different and more favorable to him. A reasonable probability is a probability sufficient to undermine confidence in the outcome of the criminal proceeding. *Strickland*, 466 U.S. at 693-94; *Humphress*, 398 F.3d at 859; *Campbell*, 364 F.3d at 730; *Griffin*, 330 F.3d at 736; *Mason,* 320 F.3d at 617; *Wickline,* 319 F.3d at 819. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." *Strickland*, 466 U.S. at 686.

## V.    Analysis

Munguia wants the Court to vacate the judgment of conviction and grant him a new trial. In the alternative, he wants this Court to allow him to withdraw his not guilty plea so that he can plead guilty and obtain a plea agreement with a less severe sentence of imprisonment similar to his co-defendants' plea agreements. In the alternative, he wants the Court to "adjust" or modify the PSR and resentence him without: (1) the relevant conduct regarding the quantity (3.17 kilograms) of methamphetamine involved in the conspiracy; and (2) the two-level enhancement to his advisory guideline range pursuant to U.S.S.G. § 3B1.1(c) as an organizer, leader, manager, or supervisor of other participants in the conspiracy. [Court Doc. Nos. 249, p. 12; 250 p. 3].

He presents the following six claims or grounds for relief in his § 2255 motion.

### A.    Claim 1

Munguia claims that his counsel was ineffective for failing to explore the possibility of a plea

agreement prior to trial. Munguia alleges that he asked Whittaker to look into the possibility of a plea agreement with the government. Whittaker said that he approached the United States Attorney several times about negotiating a plea agreement but the prosecutor had not put any plea bargain offers "on the table." This upsets Munguia because his co-defendants executed plea agreements, pleaded guilty, and received shorter sentences of imprisonment compared to Munguia.

It is alleged that Whittaker advised Munguia not to worry about a plea bargain because Whittaker was sure that he would be acquitted at trial. Munguia contends that if Whittaker had been able to negotiate a "favorable" plea bargain, then he would have pleaded guilty and not taken his case to trial. Munguia does not explain precisely what he would have considered to be a "favorable" plea agreement. The Court infers that when Munguia uses the term "favorable," he means a plea bargain that would have been acceptable to him containing lenient terms, i.e. one similar or equivalent to his co-defendants' plea agreements.

Munguia argues that he was deprived of effective assistance of counsel during the plea-bargaining process. He strives to make his case fit within the parameters of *Lafler v. Cooper*, 132 S.Ct. 1376. It is alleged Whittaker advised Munguia that going to trial would achieve a better result instead of pleading guilty. Munguia contends that Whittaker had a duty to notify the Court and the United States Attorney that he was willing to accept responsibility for his "individual acts." Based on Munguia's statements in the record, the Courts infers that he was not willing to plead guilty and accept responsibility for the foreseeable criminal conduct of his co-conspirators.

Munguia asserts that key issues which could have a significant impact both on sentencing and on his decision whether to plead guilty or proceed to trial were not explained by Whittaker prior to trial. It is alleged that when Munguia made his decision to "stop trying to plead guilty" and take

his case to trial, Munguia had not been advised by counsel of the following matters: (1) any specific term of imprisonment or amount of time Munguia might receive during sentencing, except Whittaker advised that he was facing a maximum of life imprisonment; (2) Munguia could obtain a three-level reduction in his offense level pursuant to U.S.S.G. § 3E1.1 by pleading guilty and accepting responsibility; (3) Munguia could receive a two-level enhancement in his offense level pursuant to U.S.S.G. § 3B1.1(c) as an organizer, leader, manager, or supervisor of one or more other participants in the methamphetamine trafficking conspiracy; and (4) Munguia would be held accountable for the conduct of other co-conspirators, regardless of whether Munguia had actual knowledge of it. [Court Doc. No. 274, pp. 4-5].

In hindsight, Munguia says that it would have been to his advantage to obtain a "favorable" plea bargain and plead guilty instead of taking his case to trial. It is alleged that Whittaker incompetently advised it was better for Munguia to plead not guilty and go to trial. Munguia says this was bad advice because: (1) co-defendants Stevenson and Lopez-Galardo, along with unindicted co-conspirator Denise Arellano, were cooperating with the prosecution and ready to testify against Munguia at trial; and (2) the government had seized methamphetamine and $50,000 in cash which could be converted into an additional quantity of methamphetamine as part of the conspiracy.

This ineffective counsel claim fails. The Court concludes that Munguia cannot meet his burden of showing that counsel's performance was deficient and caused him actual prejudice under the *Strickland* test.

Based on the facts and circumstances in Munguia's case, the Court finds that Whittaker's affidavit is credible and worthy of belief. Munguia's self-serving allegations are contradicted by the record and inherently incredible. In the face of the government's overwhelming incriminating

13

evidence against Munguia, it is much more plausible to believe that Whittaker advised Munguia to consider pleading guilty prior to trial. Whittaker states that Munguia rejected this advice, refused to plead guilty, and insisted on taking his case to trial. Whittaker complied with Munguia's decision. This does not amount to ineffective counsel. The credible evidence in the record establishes that Whittaker provided Munguia with objectively reasonable legal advice and competent representation.

Although there are competing affidavits from Whittaker and Munguia which present different versions of what occurred during their pretrial conferences, it is unnecessary to have an evidentiary hearing. Munguia's claim is primarily based on conjecture and speculation. Munguia cannot establish that the United States Attorney ever offered or was willing to offer a "favorable" plea agreement with lenient terms that would have been acceptable to him. Therefore, Munguia fails to meet his burden of showing there is a reasonable probability that he would have pleaded guilty rather than take his case to trial. *Comrie v. United States*, 455 Fed. Appx. 637, 640 (6th Cir. 2012); *White v. United States*, 313 Fed. Appx. 794, 798 (6th Cir. 2008); *Humphress*, 398 F.3d at 858-59. Munguia speculates that if Whittaker could have negotiated a favorable plea agreement, i.e. one with sufficiently lenient terms acceptable to Munguia, then he would have pleaded guilty and avoided trial. This is nothing more than wishful thinking on the part of Munguia.

Munguia does not allege or offer any probative facts to establish that the government either offered or was willing to offer him a "favorable" plea bargain. Munguia does not present any facts and evidence to show that his counsel received a plea agreement offer from the prosecutor but failed to communicate the offer to him. Moreover, Munguia does not contend that he would have definitely accepted a less than "favorable" plea agreement. Munguia also does not contend or

establish that he would have changed his plea to guilty without a "favorable" plea agreement.

Respondent United States asserts that, as a practical matter, Munguia's only real option would have been to plead guilty without a "favorable" plea agreement containing lenient terms. The United States Attorney was not going to offer Munguia the kind of plea agreement with lenient terms that he would have found acceptable. Consequently, Munguia fails to meet his burden of showing both prongs of the *Strickland* test. Munguia cannot show that his counsel's performance was deficient and caused him to suffer any actual prejudice.

This Court is guided by and follows *Clark v. United States*, 2012 WL 137832 (E.D. Tenn. Jan. 17, 2012). Munguia contends that counsel was ineffective for not obtaining an offer of a favorable plea bargain from the United States Attorney. This claim is so speculative that it fails to state a viable claim upon which relief can be granted under 28 U.S.C. § 2255. There is no federal constitutional right to plea bargain. The government was not required to plea bargain with Munguia or offer him any favorable (lenient) terms if the prosecutor preferred to take the case to trial. *Id*. at ** 3-4; *see also Weatherford v. Busey*, 428 U.S. 545, 561 (1977); *United States v. Sammons*, 918 F.2d 592, 601 (6th Cir. 1990). In the absence of any facts and evidence showing that the United States Attorney either offered or was willing to offer Munguia a "favorable" plea agreement that would have been acceptable to him, Munguia cannot make out a viable claim of ineffective counsel. Defense counsel cannot be faulted for failing to obtain a favorable plea agreement when the United States Attorney exercised prosecutorial discretion and did not offer a plea bargain containing lenient terms that Munguia desired.

Munguia's reliance on *Lafler*, 132 S.Ct. 1376, is misplaced. *Lafler* is inapposite and readily distinguishable from Munguia's case. Unlike the fact situation in *Lafler*, the government did not

offer a favorable plea agreement to Munguia. Unlike *Lafler,* Munguia did not reject the offer of a plea bargain which he otherwise would have accepted but for objectively unreasonable legal advice from his attorney amounting to ineffective assistance of his counsel.

The Sixth Amendment right to effective assistance of counsel extends to the plea-bargaining process. *Lafler*, 132 S.Ct. at 1384; *Titlow v. Burt*, 680 F.3d 577, 586 (6th Cir. 2012), *cert. granted*, 133 S.Ct. 1457, 185 L.Ed.2d 360 (U.S. Feb. 25, 2013). If the prosecutor offers a plea bargain, a defendant has the right to effective assistance of counsel in considering whether to accept it. If that right is denied, prejudice can be shown if the loss of the defendants's opportunity to accept the plea bargain led to a trial resulting in a conviction on more serious charges or a more severe sentence. *Lafler*, 132 S.Ct. at 1387; *Jones v. United States,* 504 Fed. Appx. 405, 407 (6th Cir. 2012).

Although the ultimate decision whether to accept the government's offer of a plea agreement rests with a defendant, counsel has an obligation to inform the defendant of the available options – either accept the offer and plead guilty or take the case to trial – and the defendant's sentence exposure. *Jones,* 504 Fed. Appx. at 407; *Titlow*, 680 F.3d at 587, 589-90; *Smith v. United States*, 348 F.3d 545, 552 (6th Cir. 2003). A defendant's decision whether to accept the government's offer of a plea agreement must be as informed as possible. *Titlow*, 680 F.3d at 589-90; *Miller v. Straub*, 299 F.3d 570, 580 (6th Cir. 2002). A defendant has a right to expect that counsel will review the criminal charges with him by explaining the elements necessary for the government to secure a conviction, discuss the evidence as it bears on those elements, and explain the sentencing exposure that he would face as a consequence of exercising each of the options available. *Jones,* 504 Fed. Appx. at 407; *Titlow*, 680 F.3d at 587; *Smith*, 348 F.3d at 553.

*Lafler*, 132 S.Ct. at 1387 and this line of precedent does not apply unless the government

actually offers a plea agreement to a defendant. To satisfy the prejudice prong of the *Strickland* test, Munguia is required to show that, but for counsel's deficient performance, there is a reasonable probability that: (1) the plea agreement would have been presented to the Court, i.e. Munguia would have accepted the government's offer of a plea agreement and the prosecution would not have withdrawn it in light of intervening circumstances; (2) the Court would have accepted the plea agreement; and (3) the conviction and/or sentence under the terms of the plea agreement would have been less severe and more favorable to Munguia than under the judgment of conviction and sentence that were imposed after the trial. *Lafler*, 132 S.Ct. at 1385; *Titlow*, 680 F.3d at 588, 591. A reasonable probability is a probability sufficient to undermine confidence in the outcome of Munguia's case. *Strickland*, 466 U.S. at 694; *Titlow*, 680 F.3d at 588.

Munguia's problem is that he fails to present any facts and evidence showing that this line of precedent based on *Lafler* and its progeny is applicable to his case. There is nothing in the record showing that the United States Attorney ever offered or was willing to offer a "favorable" plea agreement containing lenient terms that would have been acceptable to Munguia. Munguia does not come close to showing that it is necessary to hold an evidentiary hearing. In the absence of any offer by the government of a "favorable" plea agreement, *Lafler* does not apply to Munguia's case.

Even if we assume *arguendo* that Whittaker may have advised Munguia to plead not guilty and take his case to trial, which Whittaker adamantly denies doing, Munguia does not have enough to make out a viable Sixth Amendment claim of ineffective counsel. Whittaker cannot be found to have rendered ineffective counsel if he incorrectly predicted the outcome of the trial. If Whittaker simply made an erroneous strategic prediction about the outcome of Munguia's trial, this would not necessarily constitute deficient performance. *Lafler*, 132 S.Ct. at 1391; *Ryal v. Lafler,* 508 Fed.

17

Appx. 516, 522 (6th Cir. 2012).

**B.     Claim 3**

Claim 3 is similar to and intertwined with claim 1.  Munguia claims that counsel was ineffective for failing to explain the elements of the conspiracy charge and "what little evidence" the government needed to prove the conspiracy.  Munguia contends if counsel had explained prior to trial that the government needed "very little evidence" to convict him on the Count One conspiracy, then Munguia would have insisted on working out a favorable plea agreement and pleading guilty instead of going to trial.  Munguia repeats his allegation that counsel was ineffective for advising him to proceed to trial instead of pleading guilty and negotiating a plea agreement.

This claim fails.  In hindsight, Munguia regrets his decision to plead not guilty and take his chances at trial.  In the aftermath of his conviction at trial, Mungia now wants to change his mind and reverse his prior decision so that he can plead guilty, obtain a plea agreement, and receive a shorter sentence of imprisonment similar to his co-defendants.  This he cannot do via a 28 U.S.C. § 2255 motion.

For the same reasons expressed with regard to the related claim 1, the Court finds that Munguia cannot meet his burden of showing that counsel's performance was deficient and caused him to suffer actual prejudice under the *Strickland* test.  Munguia cannot show that, but for the alleged deficient performance of his counsel, he could have obtained a "favorable" plea agreement from the United States Attorney and pleaded guilty instead of taking his case to trial.

As discussed *supra* with regard to claim 1, Munguia does not allege or offer any specific facts and evidence to establish that the United States Attorney either offered or was willing to offer a "favorable" plea agreement with lenient terms that would have been acceptable to him.  In his

18

affidavit, Whittaker states that prior to trial he discussed with Munguia the strong weight of the government's incriminating evidence. For example, prior to trial Munguia was advised that co-defendants Stevenson and Lopez-Galardo were going to testify as cooperating witnesses for the prosecution. Whittaker had several conferences with Munguia to discuss the case and prepare for trial. Whittaker advised Munguia that he was likely to be found guilty and convicted at trial.

Although Whittaker advised Munguia to consider pleading guilty, Munguia rejected this sound advice and insisted on taking his case to trial. Whittaker says that Munguia refused to discuss changing his plea to guilty. The Court finds that these statements by Whittaker in his sworn affidavit are credible and worthy of belief. Munguia's self-serving statements are contradicted by the record and inherently incredible. In sum, Whittaker provided Munguia with objectively reasonable legal advice and competent representation. The bottom line is that Munguia must live with the consequences of his decision to plead not guilty and take his case to trial.

### C.    Claim 2

Claim 2 is subdivided into two parts.

### 1.    Enhancement to Guideline Offense Level Pursuant to U.S.S.G. § 3B1.1(c)

Munguia claims that counsel was ineffective during sentencing by failing to challenge the two-level enhancement to his guideline offense level pursuant to U.S.S.G. § 3B1.1(c) on the basis that Munguia was an organizer, leader, manager, or supervisor of one or more other participants in the methamphetamine trafficking conspiracy. This claim is without merit. Munguia has not met his burden of showing that counsel's performance was deficient and caused him to suffer any actual prejudice under the *Strickland* test.

This claim is based on a false premise. Munguia's counsel did raise an objection to the

PSR's two-level increase pursuant to U.S.S.G. § 3B1.1(c). [Court Doc. No. 227]. This Court considered and denied the objection during the sentencing hearing. The performance of Munguia's counsel was competent and objectively reasonable. The mere fact that Whittaker was unsuccessful in his efforts to persuade this Court not to apply the two-level U.S.S.G. § 3B1.1(c) to Munguia does not mean that there was ineffective assistance of counsel. Whittaker was unable to overcome the facts and evidence that refuted his argument.

Munguia cannot show that he suffered any actual prejudice. This Court correctly calculated his adjusted guideline offense level by applying the two-level increase. U.S.S.G. § 3B1.1(c) provides that the offense level is increased by two levels if Munguia was an organizer, leader, manager, or supervisor in any criminal activity. To qualify for the enhancement under U.S.S.G. § 3B1.1(c), Munguia must have been the organizer, leader, manager, or supervisor of one or more other participants in the conspiracy. Munguia must have exerted control over at least one other participant in the conspiracy for the enhancement to be warranted. U.S.S.G. § 3B1.1(c) Commentary, Application Note 2; *United States v. Jones*, 2013 WL 1798996, * 5 (6th Cir. April 29, 2013); *United States v. Lalonde*, 509 F.3d 750, 756 (6th Cir. 2007); *United States v. Vandeberg*, 201 F.3d 805, 811 (6th Cir. 2000); *United States v. Gort-Didonato*, 109 F.3d 318, 321 (6th Cir. 1997). A "participant" is defined as a "a person who is criminally responsible for the commission of the offense, but need not have been convicted." U.S.S.G. § 3B1.(c) Commentary, Application Note 1; *Jones*, 2013 WL 1798996, at * 5.

To determine whether Munguia had a leadership role in the conspiracy, the relevant factors include, but are not limited to:

> the exercise of decision making authority, the nature of the participation in the commission of the offense, the recruitment of accomplices, the

20

claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over the others.

U.S.S.G. § 3B1.(c) Commentary, Application Note 4; *see Jones*, 2013 WL 1798996, at * 5; *Lalonde*, 509 F.3d at 756; *United States v. Kelly*, 204 F.3d 652, 657-58 (6th Cir. 2000). During sentencing the government bears the burden of proving the elements of U.S.S.G. § 3B1.(c) by a preponderance of the evidence. *Jones*, 2013 WL 1798996, at * 5; *Gort-Didonato*, 109 F.3d at 320.

The preponderance of the evidence presented at trial established that Munguia recruited and directed the criminal activities of two other participants in the conspiracy, co-defendant Lopez-Galardo and Girardo Ramirez-Carmona. The two-level enhancement was warranted under U.S.S.G. § 3B1.1(c) because Munguia was a leader who exerted control over at least one other participant in the conspiracy. During the trial, Lopez-Galardo testified that he and Girardo Ramirez-Carmona were methamphetamine couriers working for Munguia, and they operated under Munguia's orders and directions. Munguia recruited Lopez-Galardo and Ramirez-Carmona to participate in the methamphetamine conspiracy. Munguia had a leadership role because he coordinated their drug trafficking activities, told them where to meet people, supplied them with methamphetamine to be delivered, and took receipt of the money or proceeds derived from the sale of methamphetamine. This testimony by Lopez-Galardo was corroborated by other co-conspirators and additional evidence.

Munguia contends that he never met and did not know Ramirez-Carmona. Even if we assume *arguendo* that Munguia never met and did not personally know Ramirez-Carmona, this would be insufficient to show it was error to apply U.S.S.G. § 3B1.1(c) to calculate Munguia's adjusted guideline offense level. At the very least, the preponderance of the evidence presented at

trial established that Munguia recruited and directed the criminal activity of Lopez-Galardo. This was enough to warrant applying the two-level enhancement pursuant to § 3B1.1(c). Munguia's arguments to the contrary are frivolous.

Munguia further claims that counsel was ineffective during sentencing by failing to challenge the two-level enhancement to his guideline offense level pursuant to U.S.S.G. § 3B1.1(c) based on *United States v. Booker*, 543 U.S. 220 (2005). Munguia asserts that his guideline range was improperly enhanced pursuant to U.S.S.G. § 3B1.1(c) based on findings of fact made by the district judge and not facts established by the jury's verdict. He cites *Booker* for the proposition that a defendant's Sixth Amendment right to a jury trial is violated when a sentencing judge determines any fact, other than a prior conviction, that is used to support a sentence exceeding the statutory maximum authorized by the facts established by a guilty plea, the jury' verdict, or admitted by the defendant. *Id*. at 233-34; *see also Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000) (Other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the statutory maximum must be submitted to a jury and proved beyond a reasonable doubt); *United States v. Hadley*, 431 F.3d 484, 514 (6th Cir. 2005).

Munguia argues that there was a *Booker* violation during sentencing in his case. He claims that counsel was ineffective for failing to challenge or object to the alleged *Booker* violation. The gist of Munguia's argument is that this Court purportedly ran afoul of *Booker* when the district judge made a finding of fact by a preponderance of the evidence during sentencing that he was an organizer, leader, manager, or supervisor and qualified for the two-level enhancement under U.S.S.G. § 3B1.1(c). This particular fact was not determined by the jury at trial. Munguia contends that the jury's verdict did not contain any specific finding that he was an organizer, leader manager,

22

or supervisor for purposes of applying U.S.S.G. § 3B1.1(c) and he did not make any admission of this fact.

This *Booker* argument fails. Munguia misconstrues *Booker*. There was no violation of *Booker* in Munguia's case.

The Sixth Amendment does "not automatically forbid a sentencing court to take account of factual matters not determined by a jury and to increase the sentence in consequence." *Rita v. United States*, 551 U.S. 338, 352 (2007). The Sixth Circuit does not require that all factual findings affecting the severity of a sentence be made by a jury beyond a reasonable doubt. *United States v. Denson*, 2013 WL 4558214, 9 (6th Cir. Aug. 29, 2013); *United States v. Sexton*, 512 F.3d 326, 329-30 (6th Cir. 2008). Rather, the Sixth Amendment prohibits judicial fact finding during sentencing that operates to increase a defendant's otherwise statutory maximum punishment. *Cunningham v. California,* 549 U.S. 270, 281 (2007); *Apprendi*, 530 U.S. at 490; *United States v. White*, 551 F.3d 381, 383-85 (6th Cir. 2008) (en banc).

It is well settled that post-*Booker* a federal district judge is authorized during sentencing to make findings of fact by a preponderance of the evidence to determine an advisory guideline range, so long as the resulting sentence does not increase the punishment for the criminal offense beyond the prescribed statutory maximum based on the jury's verdict. *United States v. Stewart*, 628 F.3d 246, 256 (6th Cir. 2010); *United States v. Kerestes*, 375 Fed. Appx. 509, 513 (6th Cir. 2010); *United States v. Roberge*, 565 F.3d 1005, 1012 (6th Cir. 2009); *United States v. Harris*, 308 Fed. Appx. 932, 940 (6th Cir. 2009); *White*, 551 F.3d at 385; *United States v. Mayberry*, 540 F.3d 506, 516-17 (6th Cir. 2008); *United States v. Pomales*, 268 Fed. Appx. 419, 420-21 (6th Cir. 2008); *United States v. Conatser*, 514 F.3d 508, 527-28 (6th Cir. 2008); *United States v. Vonner*, 516 F.3d 382, 384-85 (6th

Cir. 2008) (en banc); *United States v. Gates*, 461 F.3d 703, 707-08 (6th Cir. 2006); *United States v. Ferguson*, 456 F.3d 660, 665 (6th Cir. 2006); *United States v. Dykes*, 2011 WL 1357481, ** 4-5 (E.D. Tenn. April 11, 2011).

Munguia does not contend and he cannot show that this Court exceeded the prescribed statutory maximum sentence for his criminal offense based on the jury's verdict. In the verdict form [Court Doc. No. 206], the jury made a specific finding that the government had proved beyond a reasonable that Munguia conspired to distribute 500 grams or more of methamphetamine. Pursuant to 21 U.S.C. § 841(b)(1)(A) his statutory maximum sentence was life imprisonment. This Court sentenced Munguia to a term of 240 months imprisonment. Because Munguia received a sentence less than the statutory maximum of life imprisonment, there is no violation of *Booker* and *Apprendi*. The judicial fact-finding that Munguia complains of here – that he qualified for the two-level enhancement under U.S.S.G. § 3B1.1(c) – affected the Court's determination of his adjusted guideline offense level but it did not result in the imposition of a sentence that was greater than the prescribed statutory maximum of life imprisonment under 21 U.S.C. § 841(b)(1)(A).

Accordingly, Munguia fails to meet his burden of showing that counsel's performance was deficient and caused him to suffer actual prejudice under the *Strickland* test. His counsel's performance was competent and objectively reasonable. If Munguia's counsel had raised an objection to the two-level enhancement under U.S.S.G. § 3B1.1(c) based on *Booker*, the objection would have been futile and denied as frivolous. Defense counsel is not required to raise and advocate meritless arguments or objections which have no chance of success. *Mapes v. Coyle*, 171 F.3d 408, 427 (6th Cir. 1999); *Brain*, 2011 WL 1343344, at * 11.

## 2.    Quantity of Methamphetamine Involved in Conspiracy

Munguia claims that counsel was ineffective during sentencing by failing to challenge the PSR's statement that he was responsible for 3.17 kilograms of methamphetamine. Munguia argues that counsel had an "ample basis" to contest the 3.17 kilograms of methamphetamine and persuade the Court to find that he was responsible for less than 1.5 kilograms of methamphetamine.

Munguia states the following. When the police stopped and searched Lopez-Galardo's automobile, the police seized 907.2 grams of methamphetamine. Lopez-Galardo told the police that he was only a courier and he was taking the methamphetamine to Stevenson. Stevenson stated that Whaley had introduced Stevenson to Munguia, and Whaley identified Munguia as the source of the methamphetamine.[1] Stevenson further stated that he had purchased approximately 3.17 kilograms of methamphetamine. Based on this testimony, it was determined that Munguia should be held accountable for 3.17 kilograms of methamphetamine.

Munguia contends that during sentencing his counsel should have argued there was no "indicia of reliability" regarding the PSR's determination that 3.17 kilograms of methamphetamine were attributable to him. Munguia says his counsel failed to argue that, at most, the quantity of methamphetamine attributable to him was more than 500 grams but less than 1.5 kilograms, which would have reduced his guideline offense level to 32 and resulted in a lower sentencing guideline range. Munguia asserts that counsel was ineffective by failing to argue that: (1) Munguia was never found to be in actual possession of methamphetamine; and (2) his offense conduct set forth in the PSR was based on unreliable trial testimony provided by co-defendants who cooperated with the

---

[1]    During the trial, co-conspirator Denise Arellano testified that she was arrested while carrying methamphetamine from Munguia to Whaley. *Munguia*, 273 Fed. Appx. 519.

prosecution and testified against Munguia to obtain reduced sentences.

This argument fails because it is based on a false premise. When Munguia contends that his counsel failed to raise an objection to the PSR concerning the 3.17 kilograms of methamphetamine, he is mistaken. The record shows that counsel filed an objection challenging the PSR's statement that 3.17 kilograms of methamphetamine were attributable to Munguia. His counsel argued that information in the PSR was based on inaccurate amounts of methamphetamine. Whittaker argued that Munguia should only be held accountable for between 500 grams and 1.5 kilograms of methamphetamine. This Court considered and denied the objection during the sentencing hearing.

Moreover, the Court rejects Munguia's argument that the trial testimony used to establish he is accountable for 3.17 kilograms of methamphetamine was unreliable and should have been disregarded. Munguia's weak attack on the reliability of the trial testimony presented by the government's witnesses is not persuasive. During the sentencing hearing this Court correctly decided the government had proved by a preponderance of the evidence that Munguia was responsible for 3.17 kilograms of methamphetamine. The trial testimony was reliable and more than sufficient to establish this fact. There is nothing in Munguia's § 2255 motion that causes the Court to reconsider and change its decision on this sentencing issue.

Munguia makes a supplemental argument wherein he mistakenly relies on the Supreme Court's recent opinion in *Alleyne v. United States*, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). [Court Doc. No. 274]. He labors in vain to make his case fit under *Alleyne*. Munguia's reliance on *Alleyne* is misplaced. He misconstrues and seeks to misapply *Alleyne* to his case. The core holding in *Alleyne* is inapposite and has no application to Munguia's case.

The Sixth Amendment provides that persons accused of crimes have the right to a trial by

jury. This Sixth Amendment right, in conjunction with the Fifth Amendment right to due process of law, requires that each element of a criminal offense be proved to the jury beyond a reasonable doubt. "The substance and scope of this right depend upon the proper designation of the facts that are elements of the crime." *Id.* at 2156. Mandatory statutory minimum sentences increase the penalty for a crime. *Alleyne* holds that any fact that increases a mandatory statutory minimum sentence is an element of the criminal offense which must be found by the jury beyond a reasonable doubt. *Id.* at 2155, 2158. This new rule of constitutional law announced in *Alleyne* is an extension of *Apprendi*, 530 U.S. 466. A fact triggering a mandatory statutory minimum sentence alters the prescribed range of sentences to which a criminal defendant is exposed. *Alleyne*, 133 S.Ct. at 2160 (citing *Apprendi*, 530 U.S. at 490).

In *Alleyne,* the Supreme Court took care to note this does not mean that "any fact that influences judicial discretion must be found by a jury. We have long recognized that broad sentencing discretion, informed by judicial factfinding does not violate the Sixth Amendment." *Alleyne*, 133 S.Ct. at 2163 (citing *Apprendi*, 530 U.S. at 481). The *Alleyne* Court reaffirmed the following language taken from *Apprendi*: "[N]othing in this history suggests that it is impermissible for judges to exercise discretion – taking into consideration various factors relating both to offense and offender – in imposing a judgment *within the range* prescribed by statute. We have often noted that judges in this country have long exercised discretion of this nature in imposing sentence within *statutory limits* in the individual case." *Apprendi*, 530 U.S. at 481; *see Alleyne*, 133 S.Ct. at 2163.

Relying on *Alleyne,* Munguia argues that his Sixth Amendment right to a trial by jury and his right to have each element of the criminal offense proved to the jury beyond a reasonable doubt was violated in the following ways. The jury's verdict did not make a specific finding that the

government had proved beyond a reasonable doubt that he was responsible for a total of 3.17 kilograms of methamphetamine. In its verdict form [Court Doc. No. 206], the jury found that the government proved beyond a reasonable doubt that Munguia conspired to distribute 500 grams or more of methamphetamine. Munguia complains that the District Court during sentencing found by a preponderance of the evidence that he was responsible for 3.17 kilograms of methamphetamine and this judicial factfinding is not allowed under *Alleyne* because it increases his advisory guideline range under the United States Sentencing Guidelines. Munguia does not allege and cannot show that this judicial factfinding during his sentencing increased his mandatory statutory minimum sentence under 21 U.S.C. § 841(b)(1)(A).

In addition, Munguia similarly complains that the jury's verdict did not find the government had proved beyond a reasonable doubt that the $50,000 was part of the methamphetamine trafficking conspiracy and should be converted into 1.5 kilograms of methamphetamine attributable to him. Munguia complains that the PSR and the District Court during sentencing converted the $50,000 into the equivalent of 1.5 kilograms of methamphetamine. During sentencing this Court found by a preponderance of the evidence that the $50,000 should be converted into 1.5 kilograms of methamphetamine and Munguia was responsible for it. Munguia argues that such judicial factfinding is not allowed under *Alleyne* because it increases his advisory sentencing guideline range. Munguia does not allege and cannot show that this judicial factfinding during sentencing increased his mandatory statutory minimum sentence under 21 U.S.C. § 841(b)(1)(A).

This Court concludes that *Alleyne* does not afford any basis for granting collateral post-conviction relief to Munguia under 28 U.S.C. § 2255. Munguia's argument predicated on *Alleyne* fails for two reasons. First, the new rule announced in *Alleyne* is not retroactive and it cannot be

28

applied retroactively to cases on collateral review under § 2255. *Simpson v. United States*, 721 F.3d 875, 876 (7th Cir. 2013); *Mingo v. United States*, 2013 WL 4499249 (W.D. Mich. Aug. 19, 2013); *United States v. Graham*, 2013 WL 4400521 (E.D. Ky. Aug. 15, 2013); *Springs v. United States*, 2013 WL 4042642, * 4 (W.D.N.C. Aug. 9, 2013); *United States v. Reyes*, 2013 WL 4042508, ** 14-19 (E.D. Pa. Aug. 8, 2013); *Affolter v. United States*, 2013 WL 3884176 (E.D. Mo. July 26, 2013); *United States v. Stanley*, 2013 WL 3752126, * 7 (N.D. Okla. July 16, 2013).

Second, even if *Alleyne* could be applied retroactively to cases on collateral review under 28 U.S.C. § 2255, it does not provide any benefit or relief here to Munguia. Munguia cannot show that there is any violation of his right to a jury trial under *Alleyne*.

The jury's verdict found beyond a reasonable that Munguia conspired to distribute 500 grams or more of methamphetamine. The jury's verdict serves to establish Munguia's statutory mandatory minimum sentence. Because the jury explicitly found that Munguia conspired to distribute 500 grams or more of methamphetamine, his mandatory minimum sentence was ten years imprisonment pursuant to 21 U.S.C. § 841(b)(1)(A). The judicial factfinding during Munguia's sentencing hearing did not increase his mandatory minimum sentence under 21 U.S.C. § 841(b)(1)(A). For purposes of applying *Alleyne,* it is immaterial whether judicial factfinding during sentencing increased Munguia's advisory guideline range. Because Munguia was properly sentenced within the prescribed statutory range authorized by 21 U.S.C. § 841(b)(1)(A), there is no *Alleyne* problem in his case. *United States v. Jones*, 2013 WL 4045973, * 10 (6th Cir. Aug. 12, 2013); *Simpson*, 721 F.3d at 876-77.

Accordingly, Munguia has not met his burden of showing that counsel's performance was deficient and caused him to suffer any actual prejudice under the *Strickland* test.

29

## D.    Claim 4

Next, Munguia claims that counsel was ineffective by failing to submit an affidavit to support his post-trial motion to arrest and detain an alleged material witness, Jose Goicochea ("Goicochea"), as required by 18 U.S.C. § 3144.  This matter is discussed by the Sixth Circuit in *Munguia*, 273 Fed. Appx. at 520, 522-23.

18 U.S.C. § 3144 provides in part: "If it appears from an affidavit filed by a party that the testimony of a person is material in a criminal proceeding, and if it is shown that it may become impracticable to secure the presence of the person by subpoena, a judicial officer may order the arrest of the person and treat the person in accordance with the provisions of section 3142 of this title."

During the trial, Munguia's counsel asked this Court to issue a warrant for the arrest and detention of putative witness Goicochea pursuant to 18 U.S.C. § 3144.  Counsel asserted that Goicochea was a necessary material witness for Munguia's defense and Munguia had been unable to secure Goicochea's presence at trial despite a subpoena.

Munguia's counsel explained that Goicochea was a material witness for the following reason. Co-defendant Lopez-Galardo testified that he called Munguia by telephone to come pick him up at some point during a methamphetamine deal and Munguia sent Goicochea to get Lopez-Galardo. Munguia's counsel advised the District Court that Goicochea was prepared to testify it was not Munguia who sent Goicochea to pick up Lopez-Galardo.  In other words, Munguia wanted to use Goicochea's anticipated testimony to impeach Lopez-Galardo's testimony.  This Court granted the request and issued a warrant for the arrest and detention of Goicochea as a material witness pursuant to 18 U.S.C. § 3144, but Goicochea could not be found by the United States Marshal during the trial.

30

Goicochea did not appear and testify at the trial. *Munguia*, 273 Fed. Appx. at 520.

After the jury returned its guilty verdict, Munguia's counsel made a similar motion for the District Court to issue another warrant for the arrest and detention of Goicochea as a material witness pursuant to 18 U.S.C. § 3144. [Court Doc. No. 225]. Counsel for Munguia argued that Goicochea's anticipated testimony would be exculpatory and provide new evidence to assist Munguia in making a motion for new trial under Fed. R. Crim. P. 33. Although counsel for Munguia did not file an affidavit in support of the motion as required by § 3144, the lack of an affidavit was not addressed by the parties or the District Court. Instead, the District Court denied the post-trial motion for other reasons holding that: (1) because the trial had been completed, there was no current criminal proceeding pending in Munguia's case for which the Court could issue an arrest warrant under 18 U.S.C. § 3144; (2) there was no reason to believe that Goicochea could be found or located at that point in time; and (3) even if the anticipated testimony of Goicochea was helpful to Munguia, it would not outweigh the considerable incriminating evidence supporting Munguia's conviction. [Court Doc. No. 230]; *Munguia*, 273 Fed. Appx. at 520.

On direct appeal in the Sixth Circuit, Munguia argued that the District Court erred by denying his post-trial motion to issue another warrant for the arrest and detention of Goicochea pursuant to 18 U.S.C. § 3144. The Sixth Circuit rejected this argument. Because § 3144 provides the District Court with the discretion to issue such a warrant, the Sixth Circuit reviewed the ruling for an abuse of discretion. The Sixth Circuit decided that the District Court did not abuse its discretion.

The Sixth Circuit's analysis and reasoning is instructive. The Sixth Circuit observed it is questionable whether 18 U.S.C. § 3144 is applicable post-trial, i.e. whether there is a "criminal

proceeding" within the meaning of the statute after the trial has been completed. The District Court held that § 3144 could not be invoked post-trial and there is no legal authority to the contrary.

Assuming *arguendo* that § 3144 can be invoked post-trial, the Sixth Circuit decided that Munguia's claim of error was without merit for other reasons. An application for a material witness warrant under 18 U.S.C. § 3144 must establish there is probable cause to believe that: (1) the witness's testimony is material; and (2) it may become impracticable to secure the presence of the witness by subpoena. *Munguia*, 273 Fed. Appx. at 522. The Sixth Circuit decided that Munguia failed to meet the requirement of establishing that Goicochea's proposed testimony was material and could be used to support or make out a viable motion for new trial. Due to the lack of materiality, Munguia could not show that it was necessary to issue a post-trial warrant for Goicochea's arrest and detention under 18 U.S.C. § 3144. The Sixth Circuit stated the following:

> Here, the defendant [Munguia] cannot meet the requirement of materiality. The only purpose of the testimony at issue – Jose Goicochea's assertion that somebody besides Munguia sent him to pick up Lopez – would be to impeach Lopez's testimony that he called Munguia to pick him up and that Munguia sent somebody, presumably Goicochea, to do so. But we have held that impeachment testimony alone cannot support a motion for a new trial. *See United States v. Braggs*, 23 F.3d 1047, 1050-51 (6th Cir. 1994). And, given the overwhelming proof of guilt introduced at trial including testimony from three co-conspirators that was both consistent and corroborated by their cell phone records, it is obvious that Goicochea's testimony would not have produced an acquittal – nor would it if the case were retried. For this reason, even if we were to find error in connection with the district court's ruling, the error would necessarily be harmless.

*Munguia*, 273 Fed. Appx. at 522.

Finally, the Sixth Circuit also noted that Munguia failed to comply with the affidavit requirement in 18 U.S.C. § 3144. No affidavit was filed with Munguia's post-trial motion to arrest and detain Goicochea as a material witness under § 3144. The Sixth Circuit said that this deficiency

32

– lack of an affidavit – provides an additional ground upon which to uphold the District Court's ruling. *Munguia*, 273 Fed. Appx. at 522-23. This forms the basis for Munguia's present claim in his 28 U.S.C. § 2255 motion that his counsel was ineffective for failing to comply with the affidavit requirement in 18 U.S.C. § 3144. However, the lack of an affidavit was only one reason why the Sixth Circuit denied Munguia's claim of error on direct appeal.

This Court concludes that Munguia's claim of ineffective counsel is without merit and must be dismissed because he has not met his burden of showing that counsel's alleged deficient performance caused him to suffer any actual prejudice under the *Strickland* test. Munguia cannot show that his counsel's performance renders the result of the criminal proceeding unreliable or fundamentally unfair. *Lockhart*, 506 U.S. at 372; *Skaggs*, 235 F.3d at 270. The performance of defense counsel was not so manifestly deficient that defeat was snatched from the hands of probable victory. *Thelen,* 131 Fed. Appx. at 63; *West*, 73 F.3d at 84; *Lewis*, 11 F.3d at 1352; *Morrow*, 977 F.2d at 229. Munguia fails to show there is a reasonable probability that, but for the alleged deficient performance of his counsel, the outcome of the case would have been different and more favorable to him. It is crystal clear from the Sixth Circuit's opinion denying Munguia's direct appeal that even if his counsel had submitted an affidavit to support the post-trial motion to arrest and detain Goicochea as a material witness under 18 U.S.C. § 3144, it would not have made any difference whatsoever in the final outcome of Munguia's case. The Sixth Circuit denied Munguia's claim of error on direct appeal for another more significant reason.

At most, Munguia sought to obtain and use the proposed testimony of Goicochea solely for the purpose of impeaching the testimony of co-defendant Lopez-Galardo. Goicochea's proposed impeachment testimony is immaterial and unnecessary post-trial because it could not have been used

by Munguia to make out or support a viable motion for new trial under Fed. R. Crim. P. 33. As the Sixth Circuit explains when it dismissed Munguia's direct appeal, impeachment testimony alone cannot support a motion for new trial. *Munguia*, 273 Fed. Appx. at 522; *Braggs*, 23 F.3d at 1050-51. Therefore, any motion by Munguia for a new trial that he planned to base on the proposed impeachment testimony of Goicochea would have been futile and denied as frivolous.

For this reason, Munguia's post-trial motion seeking a warrant for the arrest and detention of Goicochea as a material witness under 18 U.S.C. § 3144 was properly denied. The lack of an affidavit was merely an additional or alternative reason why the motion was deficient. Based on these facts and circumstances, Munguia cannot show that his counsel's failure to submit an affidavit to support the post-trial motion to arrest and detain Goicochea as a material witness under § 3144 made any difference in the final outcome of Munguia's case. His counsel's failure to submit the affidavit did not cause Munguia to suffer any actual prejudice under the *Strickland* test.

Furthermore, Munguia cannot utilize a § 2255 motion to relitigate issues that were decided by the Sixth Circuit Court on his direct appeal in *Munguia*, 273 Fed. Appx. 517. Issues which are presented and decided on direct appeal may not be relitigated in a 28 U.S.C. § 2255 proceeding absent exceptional circumstances, i.e. actual (factual) innocence based on new reliable evidence or an intervening retroactive change in the law. *Wright v. United States*, 182 F.3d 458, 467 (6th Cir. 1999); *Jones*, 178 F.3d at 796; *Oliver v. United States*, 90 F.3d 177, 180 (6th Cir. 1996); *DuPont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996); *Dykes*, 2011 WL 1357481, at ** 1, 4. There are no exceptional circumstances in Munguia's case. He does not have a viable claim of actual (factual) innocence based on new reliable evidence that was not available at the time of his trial and sentencing. There is no intervening retroactive change in the applicable law.

34

### E.   Claim 5

Munguia claims that counsel was ineffective during voir dire at trial for failing to raise a *Batson* challenge after the government allegedly used a peremptory strike to exclude one of two African American persons from the jury panel. *Batson v. Kentucky,* 476 U.S. 79 (1986). The Court notes that Munguia is Hispanic. He is not an African American.

This claim is without merit. Munguia has not met his burden of showing that counsel's performance was deficient and caused him to suffer any actual prejudice under the *Strickland* test. Munguia fails to present sufficient facts and evidence to establish a *Batson* violation or that counsel's failure to raise a *Batson* challenge made any difference in the outcome of his trial. Munguia cannot show there is a reasonable probability that, but for his counsel's alleged deficient performance, the outcome of the trial would have been different and more favorable to him.

In *Batson*, the Supreme Court held that the Equal Protection Clause in the Fourteenth Amendment to the United States Constitution forbids the prosecution from using peremptory strikes during voir dire of the jury panel to exclude jurors on the basis of race. When a criminal defendant raises a *Batson* challenge, the trial court initially determines whether the defendant has made a *prima facie* showing that the prosecutor used a peremptory strike to exclude a member of the jury panel on the basis of his or her race.

To establish a *prima facie* claim under *Batson,* a defendant must establish that: (1) he is a member of a cognizable racial group; (2) the prosecutor exercised a peremptory strike to exclude from the jury venire a member of the defendant's same race; and (3) these facts, along with other relevant circumstances, raise a reasonable inference that the prosecutor used the peremptory strike to exclude the prospective juror because of his or her race. *United States v. McAllister*, 693 F.3d

35

572, 579 (6th Cir. 2012); *United States v. Odeneal*, 517 F.3d 406, 418-19 (6th Cir. 2008). A defendant may also raise a *Batson* challenge even though he is not of the same race as the excluded juror. *Powers v. Ohio,* 499 U.S. 400, 402 (1991); *McAllister*, 693 F.3d at 579 n. 2; *United States v. Simon*, 422 Fed. Appx. 489, 493 (6th Cir. 2011); *Odeneal*, 517 F.3d at 419.

Munguia fails to show that he had a valid *prima facie* claim under *Batson*. The record presently before this Court does not establish the specific race of any prospective jurors who were on the jury venire at Munguia's trial. There is nothing in the record from which a reasonable inference can be drawn that the prosecutor's decision to use a peremptory strike to exclude a particular juror was racially motivated. The record does not establish that a *Batson* error occurred at Munguia's trial and that his counsel should have raised a *Batson* challenge. Because Munguia has not established the racial composition of the jury panel at his trial, there is no way to ascertain whether or not there was a *Batson* violation. *Collins*, 195 Fed. Appx. at 422 (where record is silent as to the race or ethnicity of prospective jurors, the court cannot ascertain whether a *Batson* violation occurred). For this reason alone Munguia's ineffective counsel claim predicated on *Batson* must be denied.

Moreover, Munguia's counsel may have had good reason to want the juror excluded and may have decided not to raise a *Batson* challenge for his own strategic reasons. In any event, the Court's scrutiny of the reasonableness of counsel's performance is highly deferential. Munguia's counsel is strongly presumed to have rendered adequate legal assistance, and to have made all decisions in the exercise of reasonable professional judgment and sound strategy. *Nix*, 475 U.S. at 165; *Strickland*, 466 U.S. at 689-90; *Campbell*, 364 F.3d at 730.

The conduct of defense counsel during voir dire and jury selection is a matter of trial

strategy. A strategic decision by defense counsel cannot be the basis for a claim of ineffective counsel unless counsel's decision is shown to be so manifestly deficient and objectively unreasonable that it "permeates the entire trial with obvious unfairness." *United States v. Angel*, 355 F.3d 462, 469 (6th Cir. 2004); *Hughes v. United States*, 258 F.3d 453, 457 (6th Cir. 2001); *Nguyen v. Reynolds*, 131 F.3d 1340, 1349 (10th Cir. 1997); *Chisom v. United States*, 2013 WL 1305617, ** 4-5 (E.D. Tenn. March 28, 2013); *McLaurin v. United States*, 2010 WL 3516427, * 2 (W.D. Ky. Sept. 2, 2010); *Hall v. Bell*, 2010 WL 908933, * 26 (E.D. Tenn. March 12, 2010). In Munguia's case, a strategic decision by his counsel not to raise a *Batson* challenge cannot form the basis for a viable claim of ineffective counsel under 28 U.S.C. § 2255. In the absence of any probative facts and evidence to establish that there existed a valid basis in fact and law to raise a *Batson* challenge at trial, Munguia fails to show that his counsel's performance was so manifestly deficient and objectively unreasonable that it permeated his entire trial with obvious unfairness. *Chisom*, 2013 WL 1305617, at ** 4-5.

### F. Claim 6

Finally, Munguia claims that his counsel was ineffective for failing to challenge: (1) the racial composition of the federal grand jury that indicted him and the petit jury that found him guilty at trial; and (2) the jury selection process in the Eastern District of Tennessee. Munguia contends that counsel should have challenged the lack of Hispanic persons on the petit jury venire. It is alleged that Hispanics and African Americans were systematically excluded from serving on grand juries and petit juries in the Eastern District of Tennessee. Munguia asserts that this District Court's "jury administrator and its administrative order discriminated against Hispanics by only recognizing African Americans as a cognizable group." [Court Doc. No. 253-4, p. 6].

Munguia argues that his counsel should have raised these challenges pursuant to the Jury Selection and Service Act (JSSA), 28 U.S.C. §§ 1861 *et seq*., 18 U.S.C. § 243, and the Fifth and Sixth Amendments to the United States Constitution.  It is claimed that Munguia was deprived of his Sixth Amendment right to trial by an impartial jury representing a fair cross-section of the community, and the right to equal protection of the law guaranteed by the Due Process Clause in the Fifth Amendment.

Munguia alleges the following.  He asked Whittaker to challenge the racial composition of the federal grand jury and the petit jury on the ground that Hispanic and African American persons were systematically excluded from jury service in the Eastern District of Tennessee and the exclusions were motivated by race discrimination.  Whittaker replied that he did not believe Hispanics and African Americans were being systematically excluded from jury venires due to race discrimination.  It is alleged that Whittaker said he could not prove there was any such racial discrimination against Hispanics and African Americans in the jury venires and the jury selection process.  Whittaker is alleged to have advised Munguia that any such challenges would be "useless" because the District Court for the Eastern District of Tennessee had a written master plan for the random selection of grand jurors and petit jurors, therefore, no Hispanics, including Munguia, could win such a challenge.

The Court concludes that this ineffective counsel claim must be dismissed because Munguia fails to meet his burden of showing that Whittaker's performance was deficient and caused him to suffer actual prejudice under the *Strickland* test.  The alleged performance of Munguia's counsel was competent and objectively reasonable.  Munguia does not offer any facts and evidence to show that he had a viable basis in fact and law to challenge: (1) the racial composition of the federal grand jury

38

that indicted him and the petit jury that convicted him at trial; and (2) the jury selection process in the Eastern District of Tennessee.

Assuming *arguendo* that there were no Hispanic persons on the jury venire at Munguia's trial, this alone is insufficient to make out a viable claim that there was a violation of his federal constitutional rights. Munguia has no right under the United States Constitution or federal statutes to trial by a jury composed in whole or in part of Hispanic persons of his own race. *Batson,* 476 U.S. at 85; *Powers,* 499 U.S. at 404; *Strauder v. West Virginia,* 100 U.S. 303, 305 (1880); *United States v. Smith*, 463 Fed. Appx. 564, 571 (6th Cir. 2012) (The Supreme Court has not held that a criminal defendant is entitled to a jury of any particular racial composition).

Munguia has a right to be tried by a jury whose members are selected pursuant to nondiscriminatory criteria. *Batson,* 476 U.S. at 85-86; *Powers,* 499 U.S. at 404. However, Munguia has not established the racial composition of the grand jury that indicted him and the venire of the petit jury that convicted him at trial. The record in Munguia's case is silent as to the race of the jurors on the venires of the grand jury and the petit jury at his trial. Munguia merely indulges in speculation and conjecture that Hispanics and/or African Americans may have been systematically excluded from the jury venires in his case but he offers no facts and evidence to support this bare allegation and conclusory statement. Consequently, he cannot show there is any valid basis in fact and law to grant him relief. *Cf. Collins*, 195 Fed. Appx. at 422.

In addition, Munguia fails to present facts and evidence to support his conclusory statement that the jury selection process in the Eastern District of Tennessee systematically excluded Hispanics and/or African Americans. Three sources provide a criminal defendant with the right to trial by a jury selected from a fair cross-section of the community: the JSSA, the Sixth Amendment, and the

equal protection component of the Fifth Amendment. *Holmes v. United States*, 281 Fed. Appx. 475, 479-80 (6th Cir. 2008). The Sixth Amendment requires that the venire from which a jury is selected represents a fair cross-section of the community. *Berghuis v. Smith,* 559 U.S. 314, 319 (2010); *Taylor v. Louisiana,* 419 U.S. 522 (2007); *Smith*, 463 Fed. Appx. at 571; *Odeneal*, 517 F.3d at 411-12; *United States v. Buchanan*, 213 F.3d 302, 309 (6th Cir. 2000); *United States v. Allen*, 160 F.3d 1096, 1103 (6th Cir. 1998).

A criminal defendant is required to establish three essential elements to make out a *prima facie* violation of the Sixth Amendment's fair cross-section requirement. Munguia must show that: (1) the group of persons alleged to be excluded is a distinctive group in the community; (2) the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) this underrepresentation is due to a systematic exclusion of this group in the jury selection process. *Berghuis,* 559 U.S. at 319; *Duren v. Missouri,* 439 U.S. 357, 364 (1979), *Smith*, 463 Fed. Appx. at 571; *Odeneal*, 517 F.3d at 412; *Holmes*, 281 Fed. Appx. at 480; *Buchanan*, 213 F.3d at 309-10.

This Court assumes *arguendo* that Munguia can establish the first element, i.e. the groups of persons alleged to have been excluded, Hispanics and African Americans, were distinctive groups in the community during the relevant time period in 2004 and 2005. The Court finds that Munguia fails to meet his burden of showing the second and third elements of a *prima facie* claim under the Sixth Amendment. With regard to the second element, Munguia fails to show that the representation of Hispanics and African Americans in venires from which grand juries and petit juries were drawn or selected in the Eastern District of Tennessee during 2004 and 2005 were unfair and unreasonable in relation to the number of such persons in the community. Munguia does not offer any supporting

facts and admissible evidence to prove the second element.

With regard to the third element of a *prima facie* claim, the term "systematic exclusion" means exclusion inherent in the particular jury selection process utilized. *Duren,* 439 U.S. at 365-66; *United States v. Suggs*, 2013 WL 3984998, * 10 (6th Cir. Aug. 6, 2013); *Smith*, 463 Fed. Appx. at 571. To establish the third element, Munguia must present specific facts and evidence sufficient to allow a reasonable inference that the jury selection process utilized in the Eastern District of Tennessee during 2004 and 2005 resulted in the systematic exclusion of Hispanics and African Americans so that these distinctive groups were underrepresented in the jury venires. *Id.*

No such inference is permissible if a federal jury venire reflects the demographics of an entire multi-county federal district but not the demographics of a particular county in which the crime was committed. *Id.* Merely because the percentage of Hispanics or African Americans selected in a single jury venire in Munguia's case may not have mirrored the percentage of that group in the entire community cannot be construed as systematic exclusion. Munguia must show more than that a jury panel in his case was unrepresentative of Hispanics and/or African Americans. *Suggs*, 2013 WL 3984998, at * 10; *Odeneal*, 517 F.3d at 412; *Smith*, 463 Fed. Appx. at 571; *Allen*, 160 F.3d at 1103 (defendant must show more than that a particular jury panel was underrepresentative of the community); *Ford v. Seabold*, 841 F.2d 677, 685 (6th Cir. 1988).

The Court finds that Munguia fails to meet his burden of showing the third element. He does not present any supporting facts and evidence to prove the third element. Munguia does not identify or point to anything in the jury selection process utilized in the Eastern District of Tennessee during 2004 and 2005 which would allow a reasonable inference that the system inherently itself caused or resulted in the systematic exclusion of Hispanics and African Americans so that these groups were underrepresented in the jury venires. The jury selection process utilized in the Eastern District

41

of Tennessee has previously survived similar challenges after examination by this District Court and the Sixth Circuit. It does not systematically exclude Hispanics and African Americans. *See Holmes*, 281 Fed. Appx. at 480; *United States v. Clark*, 112 Fed. Appx. 481, 485-86 (6th Cir. 2004), *vacated on other grounds*, 545 U.S. 1101 (2005); *Love v. United States*, 2012 WL 424982, * 15 (E.D. Tenn. Feb. 9, 2012); *Jones v. United States*, 2012 WL 256197, * 4 (E.D. Tenn. Jan. 27, 2012). Because Munguia fails to establish a *prima facie* claim, it is not necessary to hold an evidentiary hearing. *Cf. Smith*, 463 Fed. Appx. at 571.

In sum, Munguia did not have a viable Sixth Amendment claim challenging the jury selection process in the Eastern District of Tennessee, and challenging the racial composition of the grand jury that indicted him and the petit jury that found him guilty at trial. Whittaker's performance was objectively reasonable and did not cause Munguia to suffer any actual prejudice. If Whittaker had raised these same arguments now presented by Munguia in his § 2255 motion, they would have been denied as frivolous. Whittaker cannot be faulted for failing to raise and advocate meritless challenges to the jury selection process in Munguia's case which had no chance of success. *Mapes*, 171 F.3d at 427; *Brain*, 2011 WL 1343344, at * 11. Whittaker's decision not to pursue futile challenges to the grand jury venire and the petit jury venire in Munguia's case does not constitute ineffective counsel. *Holmes*, 281 Fed. Appx. at 480; *Love*, 2012 WL 424982, at * 15; *Jones*, 2012 WL 256197, at * 4.

Furthermore, Munguia fails to show there is a reasonable probability that a federal grand jury with a different racial composition would have decided not to return the indictment against him. The incriminating evidence against Munguia was overwhelming. This is not a close case. Based on the facts and strong evidence presented by the government, any rational and objectively reasonable member of a grand jury, regardless of their race or ethnic background, would have easily reached the same decision to indict Munguia. Consequently, Munguia cannot show that he suffered any actual prejudice under the *Strickland* test as a result of counsel's failure to challenge the racial

42

composition of the grand jury.

## VI. Conclusion

Munguia's motion for leave to supplement the record with *Lafler*, 132 S.Ct. 1376, [Court Doc. No. 272] is GRANTED. His motion for leave to take discovery pursuant to Rule 6 of the Rules Governing Section 2255 Proceedings for the United States District Courts [Court Doc. No. 272] is DENIED. Munguia's request for an evidentiary hearing is DENIED. His motion for an order that respondent United States has waived any objection to Munguia's claims and arguments predicated on *Alleyne*, 133 S.Ct. 2151, [Court Doc. No. 277] is DENIED as moot.

The entire *pro se* motion by federal prisoner Munguia for post-conviction relief pursuant to 28 U.S.C. § 2255, as amended, [Court Doc. Nos. 249, 253] is DENIED and DISMISSED WITH PREJUDICE. If Munguia files a notice of appeal, it will be treated as an application for a certificate of appealability which is DENIED pursuant to 28 U.S.C. § 2253(c)(2) and Fed. R. App. P. 22(b) because he has failed to make a substantial showing of the denial of a federal constitutional right. The Court will certify pursuant to 28 U.S.C. § 1915(a)(3) and Fed. R. App. P. 24 that any appeal from this decision by Munguia would be frivolous and not taken in good faith.

A separate judgment will be entered.

SO ORDERED.

ENTERED: September 20, 2013.

_____/s/ R. Allan Edgar_____
R. ALLAN EDGAR
UNITED STATES DISTRICT JUDGE